[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 125-I
This is an action commenced by the plaintiff-wife pursuant to Sec. 46b-71(a), C.G.S. for the enforcement of a foreign matrimonial judgment from the State of New York and for the modification of portions of that judgment pursuant to Sec.46b-71(b), C.G.S.
The judgment was entered in the matter of Steven Swerdlow vs. Mimi Swerdlow at a Special Term, Part V of the Supreme Court of the State of New York held in and for the County of New York on August 31, 1992. It was filed in the New York County Clerk's Office on December 22, 1992. Both the plaintiff and the defendant herein filed appearances in that divorce case.
This court finds, pursuant to Sec. 46b-70, C.G.S., that it has the requisite jurisdiction to hear and decide the post judgment motions referred to below.
The New York judgment incorporated the provisions of a Separation Agreement (hereinafter referred to as "the Agreement") of the parties dated April 1, 1989, and signed by each on June 23, 1989, including Article VII, Paragraph A.(4) of that Agreement which provided: "After June 30, 1994, the Husband's CT Page 125-J maintenance obligations for the support and maintenance of the wife shall cease." (See Plaintiff's Ex. 10).
On June 30, 1994, the wife commenced an action in New York to amend and to extend the husband's alimony obligations. That action was subsequently withdrawn by the wife.
Simultaneously, on June 30, 1994, the wife filed with the Chief Clerk of the Judicial District of Fairfield, a Notice of Filing of Foreign Matrimonial Judgment; a certified copy of the aforementioned judgment of divorce (Steven Swerdlow vs. Mimi Swerdlow — Supreme Court, State of New York); and other related documents.
On October 11, 1994, the wife filed with this court a Proof of Service dated September 20, 1994.
On October 11, 1994, the wife obtained an Order for Hearing and Notice which ordered the husband to appear in this court on November 17, 1994 at 10:00 a.m. to show cause why the wife's motions should not be granted. True and attested copies of the Summons, Order for Hearing and Notice, Motion to Modify Child Support, Order, Motion to Modify Visitation, Order, Motion to Modify Alimony and to Extend Duration, Order, Motion for Counsel Fees, Order, Motion for Extension of Time, Order, and Draft CT Page 125-K Plaintiff's Financial Affidavit were served upon the husband, in hand, at his New Canaan abode by proper officer on October 20, 1994, and the originals were returned to court on November 17, 1994.
This court finds, pursuant to Sec. 46b-71(a), C.G.S., that the parties' August 31, 1992 New York judgment is properly a judgment of the State of Connecticut and that it shall be enforced and otherwise treated in the same manner as a judgment entered in a court of this state.
Having found that the New York divorce has properly become a Connecticut judgment, this court, as per Sec. 46b-71(b) C.G.S., has applied the substantive law of the State of New York (including but not limited to the issues concerning alimony, support and the awarding of counsel fees) and the procedural law of the State of Connecticut in deciding a number of post-judgment motions filed by the plaintiff. Colby vs. Colby,33 Conn. App. 417 (1994). Those motions include (103.09) Plaintiff's Motion to Modify Child Support; (105.09) Plaintiff's Motion for Modification of Alimony and to Extend Duration; (106) Plaintiff's Motion for Counsel Fees; and (112) Plaintiff's Motion for Contempt.
The parties offered no evidence or testimony regarding CT Page 125-L (104.09) Plaintiff's Motion to Modify Visitation. For that reason it is not before this court and no orders shall enter regarding that motion.
The court heard the evidence and testimony of both of the parties over the better part of four court days. The parties, through counsel, have also submitted memoranda of law concerning the issues raised.
The court makes the following findings and conclusions.
BACKGROUND FACTS
On September 9, 1979, the parties were married at Newport, Rhode Island. At the time of the marriage the wife was 27 years old and had graduated from Rhode Island College in 1974 with a B.S. in Art and Education. In September 1979 the wife started her own jewelry design business known as Mimi Designs. She worked at her business both part and full time.
After the marriage she moved to New York City with the husband where they lived together until 1989.
On May 1, 1982, the parties' daughter, Allison, was born and on April 5, 1985, the parties' son, Adam, was born. Approximately five months after Allison was born, the plaintiff CT Page 125-M stopped designing jewelry and "dabbled" in interior design with friends. Her dabbling continued up until 1987 when Allison began going to school full days.
The husband is 48 years old and is a graduate of Yale University and the NYU School of Law. He began his legal career with a New York firm where he was primarily responsible for corporate mergers and acquisitions. He later was employed as general counsel for the advertising firm of Kenyon and Echardt where he was responsible for the negotiation of various employment contracts involving entertainers. He next was employed at Gerald Hines where he was director of leasing.
The parties had a very affluent lifestyle. In 1981, they purchased a 2300 sq. ft. cooperative apartment on Park Avenue South in Manhattan where they lived for six years until 1987, when they relocated into a larger, completely renovated residence. The monthly mortgage was approximately $1300.00, according to the husband.
They had a housekeeper/nanny who worked for them from the time of their marriage until their separation in 1989.
From 1985 to 1988, they rented a beach house in Madison for the months of June to September for approximately $8,000.00 for CT Page 125-N the season. They went to dinner two or three times per week, had a subscription to the American Ballet, attended Broadway shows several times per year and the wife shopped at New York's most exclusive stores for herself and the children.
In 1989, the wife concluded that the parties "were going in separate directions" and sought legal representation for the purpose of obtaining a legal separation from the husband. She obtained counsel and the husband cooperated with that attorney but did not retain counsel of his own. He did discuss the issues with a colleague when the parties entered into their separation agreement dated April 1, 1989.
The Agreement (Plaintiff's Ex. 10 ) specifically provides for child support, custody, visitations, for a distribution of the parties' marital assets, and for the payment of time-limited alimony to be paid by the husband to the wife.
The parties subsequently entered into a written Modification of the Agreement (Plaintiff's Ex. 12) which was signed and acknowledged by the husband on May 11, 1992, and by the wife on June 18, 1992.
The Agreement, as modified, was incorporated into the August 31, 1992 divorce judgment of the Supreme Court of the CT Page 125-O State of New York, as noted hereinabove. No further change or modification of the Agreement was sought by either party at the time of the divorce judgment. No postjudgment modification of the terms and provisions of the New York divorce have been ordered to this date by any court of the State of New York or the State of Connecticut since the August 31, 1992 decree.
Subsequently, both of the parties relocated to Connecticut. The wife testified that she did so in an effort to remove the two children from the exigencies of life in New York City. The husband testified that he moved to Connecticut to stay close to his children who, in his opinion, had been moved more than 50 miles away from him by their mother in violation of the express provisions of the Agreement.
After establishing her residence in Connecticut, the wife commenced the instant action, pursuant to Connecticut statutes, to have the New York divorce judgment recognized and modified. In both (#103.09) the motion for modification of support and (#105.09) the motion for modification of alimony, the wife cites "substantial change in financial circumstances" as the basis for seeking that relief.
The Agreement provided that the defendant would pay to the plaintiff-wife as child support "the amount of $500.00 per CT Page 125-P month, per child until the child is emancipated, as defined in Article XII of [the] agreement." (Pl. Ex. 10, p. 22). It also provided that the husband would pay to the wife periodic alimony ("support and maintenance") in the amount of $500.00 per month "until the Wife's share of the proceeds of sale from the marital residence have been received by her." Thereafter he was to pay to her the sum of $5,100.00 per month until June 30, 1991, with the understanding that she was to net $3,500.00 monthly. After June 30, 1991, she was to receive $3,500.00 per month, netting $2,500.00 until June 30, 1993. Beginning July 1, 1993, she was to receive $2,000.00 per month until June 30, 1994, netting $1,500.00. "After June 30, 1994, the Husband's maintenance obligations for the support and maintenance of the wife shall cease." (Pl. Ex. 10, pp. 13-15).
The husband also agreed to assist the wife in becoming self-sufficient from the date of the Agreement until August 31, 1994, by paying "50% (fifty percent) of the cost of obtaining any educational qualifications, or professional or vocational training, etc. which [she] should desire up to a maximum of $5,000.00 per year." (Pl. Ex. 10, p. 15).
The husband also agreed to contribute to the post-secondary school expenses of the children until their emancipation (as defined in the Agreement) and for their health insurance until CT Page 125-Q their emancipation and to maintain two separate life insurance policies related to his financial obligations to the wife and the children. (Pl. Ex. 10).
The Modification of the Agreement was signed by the wife on or about June 18, 1992 and by the husband on or about May 11, 1992. By its terms it modified, to various degrees, the following portions of the Agreement: ARTICLE VIII (Custody), ARTICLE IX (Relocation by Wife), ARTICLE X (Child Support), and ARTICLE XX (Taxes).
THE MOTIONS
The wife seeks a ruling by this court that various provisions of the 1992 divorce judgment of the parties should be modified for the reason that at the time the Modified Agreement was entered into, certain provisions of that Agreement were not fair and equitable. She is asking the court to increase theamount of the support obligation of the husband and, also, toextend the term of the husband's obligation to pay her alimonyand to increase the amount of alimony. The plaintiff has also moved for counsel fees and for a finding that the defendant is in contempt.
The wife alleges in (#105.09) Motion for Modification of CT Page 125-R Alimony and To Extend Duration that there has a been a substantial change in the financial circumstances of both parties, and for that reason, the motion should be granted.
The testimony permits the following findings.
The wife was represented by counsel at the time of the Separation Agreement. The Agreement was prepared by counsel for the wife and was negotiated by the wife's counsel and the husband. The husband was not represented by counsel at the time the parties entered into the Agreement. The husband was represented by counsel at the time the June 1992 Modification was entered into, but the wife was not represented by counsel.
The defendant's March 25, 1996 financial affidavit reported his total net monthly income to be $22,677.00, which the court calculated to be approximately $272,124.00 per year. His assets were reported to have a total value of $460,000.00, and his total liabilities were listed as $92,267.00. Basic monthly expenses were stated as $22,308.00. The defendant listed his gross income per month in that affidavit to be $34,333.00 which amounts to approximately $412,000.00 per year in 1996.
At the time of the Separation Agreement (1989), the defendant's total annual income listed in his 1040 tax return CT Page 125-S (Defendant's Ex. 4), was $332,977.00 which, when adjusted for alimony paid, amounted to $297,877.00. That figure works out to approximately $24,801.75 per month as compared to the $22,677.00 per month he reports in 1996.
In 1992, the year of the New York divorce, the defendant earned a total income of $367,627 and when that sum was reduced by $42,000.00 in alimony paid to the plaintiff, his adjusted gross income was $325,625.00 (Plaintiff's Ex. 34). The difference between the total income of $367,627.00 and the $412,000.00 figure reported by the defendant for 1996 is approximately 12%.
The court finds that there has not been a substantial change in circumstances regarding the defendant's income since the date of the New York judgment in 1992 which would warrant a modification of alimony.
In 1989, at the time of the Separation Agreement, the plaintiff reported her adjusted gross income to be $41,344.00 per year (Plaintiff's Ex. 18). That breaks down to approximately $3,445.00 per month or approximately $840.00 per week. $35,100.00 of that sum was alimony received from the defendant. The plaintiff reported that $2,705 of that adjusted gross income was profit from Mimi Designs, Inc. CT Page 125-T
In 1994, the year of the divorce, the plaintiff reported that her company (Mimi Designs, Inc.) had gross sales of $24,094.00, but after costs of goods and proper deductions, ended up losing $3,637.00 for that year (Plaintiff's Ex. 8). Her personal income tax return for 1994 indicated that even after receiving $6,000.00 as alimony from the defendant, her adjusted gross income was only $2,540.00 (Plaintiff's Ex. 4); due primarily to the loss her business reported. Those bleak financial reports notwithstanding, the plaintiff participated in a New York divorce in 1994 which incorporated without any change the Amended Separation Agreement cited repeatedly herein. She also reported making a personal loan to Mimi, Inc. in 1994 in the amount of $50,808.00 (Plaintiff Ex. 8, page 4, Schedule L, Line 19).
On April 16, 1996, the plaintiff filed an amended financial affidavit which stated that her average total net weekly income was $425.58 — excluding child support received from the defendant in the amount of $288.46 per week. Extrapolated out over 52 weeks that sum would permit a finding that her total income at that time was approximately $22,130.00 per year. Conspicuous by its absence from that amount is any alimony payment from the defendant. She listed her weekly expenses as $1447.36. Her total assets were reported to be $127,486.67 and CT Page 125-U her total liabilities $41,468.18.
The court heard evidence and testimony from Barry Bosworth, a certified public accountant, concerning the plaintiff's financial picture. He testified, inter alia, that in 1995 Mimi the plaintiff's business expects gross receipts to be in the area of $120,124.00. The cost of materials and operating expenses indicated that the business could have a profit of approximately $29,042.00 for 1995. Similar figures are found in the plaintiff's financial affidavit of April 16, 1996.
The plaintiff offered extensive evidence and testimony to the effect that due to unforeseen business difficulties and the decline in her health, the plaintiff's 1994 expectation as to where her business would be by 1996 has proven disastrously short of what she hoped it was going to be. She seeks a modification of the 1992 judgment citing "a substantial change in financial circumstances of both parties."
The court finds no credible evidence of fraud, duress, or overreaching in the parties' Agreement which would require the court to vacate or modify it. Levy vs. Levy, 193 App.Div.2d 801,598 N.Y.S.2d 279 (2d Dept.) (1993).
The evidence permits the court to find that the parties CT Page 125-V lived together as husband and wife for approximately ten years before they separated. During that time they and their two children enjoyed a lavish lifestyle which was financed almost exclusively by the husband's income. Thereafter the parties entered voluntarily and knowingly into an Agreement which provided for amounts of support and alimony, as well as other property distribution. In 1992 that Agreement became a judgment of a court of requisite jurisdiction and no attempt was made by either at that time to change the provisions of the Agreement.
Based upon the evidence and testimony, the court cannot find that there has been a substantial change in the financial circumstances of both of the parties which would permit a modification of the defendant's alimony obligation as set forth in the 1992 divorce judgment.
While the parties can and did set arbitrary and unilateral limits on alimony, their proposal regarding child support is governed by additional factors including support guidelines promulgated by the legislative branch and enforceable by the judicial branch. In this case those guidelines can be found in the New York Child Support Standards Act. Each of the parties has a legal obligation to provide legally sufficient child support for their two minor children pursuant to those guidelines.
In regard to child support issues, the court notes that a CT Page 125-W modification of child support is not barred by the fact that the Child Support Standards Act has been modified since the date of the judgment. While it is generally provided that in any action or proceeding for modification of an order of child support existing prior to a change in the Child Support Standards the changes in the standards shall not constitute a change in circumstances warranting a modification of such support order,where circumstances warrant modification of such order . . .such standards shall apply (Emp. added). DRL Section 240(1)(b)(1).
The court finds that the circumstances, including but not limited to the disparate income of the parents, do warrant a modification of the existing support order in the instant case.
While the court is not required to apply the Child Support Standards Percentages when calculating the annual support obligation amount on income above $80,000.00, the law does permit
the application of such percentages as influenced by (c.) "additional factors" — including "(7) — The fact that the gross income of one parent is substantially less than the gross income of the other parent." See DRL Sec. 240(1-b) and FCA Sec. 413(1). The plaintiff's gross income is found to be approximately $30,000.00 and the defendant's gross income is found to be approximately $412,000.00. CT Page 125-X
The court enters the following orders:
(#105.09) Plaintiff's Motion for Modification of Alimony and toExtend Duration
The plaintiff's motion to modify and to extend alimony is denied and the court further finds that the defendant's obligation to pay alimony to the plaintiff pursuant to Article VII — "Support and Maintenance" of the Agreement (Plaintiff's Ex. 10 and Ex. 12) terminated on June 30, 1994 by the terms of that Agreement, as modified.
(#103.09) Plaintiff's Motion to Modify Child Support
The plaintiff's motion to modify child support is granted.
The court orders the defendant to pay to the plaintiff the sum of $350.00 per week for each of the parties' two children, Allison and Adam, pursuant to the Child Support Standards Act of the State of New York. That order is made retroactive to the date of the filing of the motion.
(#112) Plaintiff's Motion for Contempt
The plaintiff's motion for contempt is granted as follows: CT Page 125-Y the defendant is to pay to the plaintiff the full cost of school tuition and related school charges for each of the parties' two minor children beginning with the 1989-90 school year and continuing through the 1993-94 school year. In addition, the defendant is ordered to pay to the plaintiff fifty (50%) per cent of such costs incurred by the plaintiff for the benefit of each of the two children for the 1994-95 school year and thereafter.
The defendant is also ordered to pay to the plaintiff the costs she may have incurred for summer camp for each of the minor children for the years 1989 through 1994. The defendant is ordered to pay fifty (50%) per cent of any such costs and expenses incurred since 1994.
The defendant is further ordered to pay the full amount of any medical or dental expenses incurred by the plaintiff for the benefit of the two minor children through August 31, 1994, and fifty (50%) per cent of any such expenses incurred thereafter.
The defendant is to be credited with any such payments he may have already made to the plaintiff prior to the date of this order.
The Family Relations Office of the Fairfield Superior Court CT Page 125-Z is hereby directed to mediate any disputes between the parties concerning the provisions of this order.
The defendant is ordered to pay to the plaintiff's counsel the additional sum of $500.00 for his failure to pay $500.00 within 30 days of the order to do so entered by Judge Douglas Mintz on September 28, 1995.
(#106) Plaintiff's Motion for Counsel Fees
The defendant is ordered to pay to the plaintiff as costs and counsel fees in connection with these proceedings in the amount of $3,500.00 within 120 days of the date of this order.
JOSEPH W. DOHERTY, J.